

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ATHOL W. PACKER** | § | Case No. 13-41304 |
| xxx-xx-4042 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| JUDGMENT FACTORS, L.L.C. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 13-4082 |
| | § | |
| ATHOL W. PACKER | § | |
| | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION

On this date the Court considered the Motion for Summary Judgment filed by the

Defendant, Athol W. Packer ("Defendant"), in the above-referenced adversary proceeding

(the "Motion"), the amended response in opposition filed thereto by the Plaintiff,

Judgment Factors, L.L.C. (hereafter the "Response"), and the Defendant's reply thereto

(hereafter the "Reply").  The complaint filed by the Plaintiff objects to the entry of any

discharge order in favor of the Defendant pursuant to 11 U.S.C. §727(a)(2)(A),

§727(a)(3), §727(a)(4)(A) and §727(a)(5).  This Motion for Summary Judgment by the

Defendant contests all of those §727 claims.  Upon due consideration of the pleadings, the

proper summary judgment evidence submitted by the parties, and the relevant legal

authorities, the Court concludes that the Defendant has met his burden to demonstrate that there is no genuine issue as to any material fact as to the Plaintiff's §727 claims, that judgment should be granted as a matter of law to the Defendant on each of the §727 claims as asserted in the Plaintiff's Complaint, and that a discharge order should be therefore entered in favor of the Defendant in case no. 13-41304.  This disposes of all issues currently before the Court.[1]

## Factual and Procedural Background[2]

The Defendant, Athol W. Packer, has been involved in the building of custom homes in the Dallas area for a number of years.  In the mid-2000s, the Defendant formed Parthenon Development Partners, LLC with two partners, Dr. Henry Allen and Dr. David Allen (the "Partners") to develop a residential development in Prosper, TX.  The LLC and/or the individuals borrowed approximately $4,000,000.00 from Washington Federal Savings & Loan Association (the "Bank") to finance the project.  The Defendant and the Partners guaranteed the Bank note.  After the development proved unsuccessful, the Bank later foreclosed upon the real property, filed suit against the Defendant and the Partners, and subsequently obtained a deficiency judgment of approximately $5.9 million.  In

---

[1]  This Court has jurisdiction to consider the Plaintiff's Complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a).  This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[2]  The facts presented are those the Court believes to be uncontested between the parties.  They are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

November 2009, Jane Carol Puckett and Fariba "Faye" Payervand, the wives of the

Partners, created the Plaintiff, Judgment Factors, L.L.C., and, under its auspices, acquired

the judgment against the Defendant and the Partners from the Bank.

After significant efforts by Judgment Factors to collect the judgment solely against

him, the Defendant Packer filed a voluntary petition for relief under Chapter 7 of the

Bankruptcy Code in this Court on May 22, 2013, the Hon. Brenda T. Rhoades, presiding.

Ms. Linda Payne was appointed as the Chapter 7 Trustee.  Case administration in the

main Chapter 7 case is continuing.  The Trustee has filed no adversary proceeding to date.

However, on August 13, 2013, Judgment Factors timely filed this adversary

proceeding in an attempt to prevent the entry of a Chapter 7 discharge order for the

benefit of the Defendant-Debtor.  After completion of the discovery period, the Defendant

filed the present Motion on August 8, 2014, asserting that there are no genuine issues of

material fact and that, under such uncontested facts, he is entitled to a judgment as a

matter of law which denies all of the Plaintiff's claims for relief under 11 U.S.C.

§727(a)(2)(A), §727(a)(3), §727(a)(4)(A) and §727(a)(5), respectively.

*Dismissal of Count V of the Complaint: Claims for Alter Ego/Reverse Veil Piercing*

Before reaching the merits of the summary judgment motion, and the evidence

tendered in regard thereto, the Court must first address the propriety of Count V of the

Plaintiff's Complaint under which the Plaintiff seeks a declaration to erase the legal

distinctions between the ownership of assets by the Defendant as an individual and the

ownership of assets by various companies[3] in which the Defendant owns all or substantially all of the membership interests.  The Plaintiff contends in Count V that the Defendant has improperly disregarded corporate formalities with regard to most of these companies and alleges that he has instead utilized them in order to hinder, delay and defraud his individual creditors.[4]  Read carefully, Count V of the Plaintiff's Complaint is a claim for reverse veil-piercing through which the Plaintiff seeks to subject the assets of the Defendant's various companies for the satisfaction of the debts of this individual

---

[3]  The various companies listed in the Debtor's Schedules and Plaintiff's Complaint and Response include P. Custom Homes, LLC; Parthenon Development, Inc.; Parthenon Bellagio Partners, LLC; Parthenon Development Partners, LLC; Bellagio Real Estate Investments, LLC; 3DX Sound, LLC; Parthenon Theaters, LLC; Parthenon Theaters I, Ltd.; and Parthenon Theaters 10, LLC.

[4]  The application of veil-piercing principles, and particularly those of *reverse* veil-piercing, is rather problematic when dealing with an individual's role with a limited liability company, particularly with a single-member LLC.  Because many smaller LLC's are managed by few members, perhaps a single member, who are actively involved in all phases of the LLC's business, the disregard of corporate formalities — one of the key factors in veil-piercing determinations — "it makes no sense to imperil the shield simply because the members do not undergo meaningless formalities such as formal meetings." Carter G. Bishop & Daniel S. Kleinberger, LIMITED LIABILITY COMPANIES: TAX AND BUSINESS LAW ¶ 6.03 at *3 (Thomson Reuters Tax and Accounting 2014).  Accordingly, the Texas legislature has subjected the applicability of veil-piercing principles in an LLC context to the same limitations which it had previously imposed as to corporations generally, including the general concept that the corporate veil may not be pierced in Texas based on failure to follow corporate formalities. See TEX. BUS. ORGS. CODE ANN. §101.002 (Vernon 2012), incorporating the protections provided to the shareholders and/or beneficial owners of Texas corporations against liability for corporate obligations under TEX. BUS. ORGS. CODE ANN. §21.223 - §21-226 (Vernon 2012).  Those statutes generally allow veil-piercing only upon proof of actual fraud for the direct personal benefit of a shareholder based upon a showing of dishonesty of purpose or an intent to deceive. *Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App.—Dallas 2010, no pet.);  *Ingalls v. SMTC Mfg. (In re SMTC Mfg.)*, 421 B.R. 251, 324 (Bankr. W.D. Tex. 2009).

Similarly, as a relatively new creature under state law, an LLC is purposefully designed to provide the limited personal liability afforded under corporate law while providing the pass-through taxation benefits of a partnership. *McNamee v. Dept. of the Treasury*, 488 F.3d 100, 107 (2d Cir. 2007). Therefore, the singular fact that the owner of a single-member LLC may elect through the IRS' check-the-box regulations for the LLC to be disregarded as a separate taxable entity for the purposes of federal income taxation, see 26 C.F.R. 301.7701-1 (2011), should have no bearing on the veil-piercing analysis.

Defendant.[5]  A significant portion of the summary judgment evidence tendered by the Plaintiff pertains to those allegations and is presented as a purported evidentiary foundation upon which the Plaintiff asserts that the Defendant can be denied a discharge under the various subsections of §727(a).

However, any evidence presented to support the alleged failure of the Defendant to observe corporate formalities or otherwise to maintain an identity separate from any of the companies, as a prelude to maintaining Count V, must be disregarded and Count V must be dismissed *sua sponte* since the Plaintiff has no standing to prosecute any such claims.[6]  It is well established in this Circuit that alter ego claims, as well as any reverse veil-piercing actions,[7] constitute property of the bankruptcy estate and therefore lie within the exclusive control of the trustee.  Thus, such claims may not be prosecuted by an individual creditor of a debtor.  *Cadle Co. v. Mims (In re Moore),* 608 F.3d 253, 258-59

---

[5] "Reverse veil-piercing, which is a common-law rather than a statutory doctrine in Texas, instead counts the assets of a corporation or other entity as the assets of its shareholder." *Hill v. Orea (In re Juliet Homes, L.P.),* 2011 WL 6817928 at *18 (Bankr. S.D. Tex., Dec. 28, 2011).  The doctrine "appl[ies] the traditional veil piercing doctrine in reverse, so that a *corporation's* assets are held accountable for the liabilities of *individuals* who treated the corporation as their alter ego." *Cadle Co. v. Brunswick Homes, L.L.C. (In re Moore)*, 379 B.R. 284, 292 (Bankr. N.D. Tex. 2007) (emphasis in original) (citing *Zahra Spiritual Trust v. United States,* 910 F.2d 240, 243 (5th Cir.1990)).

[6] "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, (1998)(citing *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990).  A plaintiff's standing to bring a cause of action is assessed at the time the suit was filed.  *Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 416 (N.D. Tex. 2013)(citing *Davis v. FEC,* 554 U.S. 724, 734 (2008)).

[7] The Court acknowledges the ease with which language regarding the disregard of corporate boundary protections, and the paths by which that disregard is obtained, can become imprecise.  See *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 643 (5th Cir. 1991).  See, *Moore*, 379 B.R. at 290-93 for a greater discussion of the precise distinctions.  However, a degree of imprecision can be tolerated a bit here, since the bankruptcy estate owns all such claims, however denominated.

(5th Cir. 2010); *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 358

(5th Cir. 1999); *Rodriguez v. Four Dominion Drive, L.L.C. (In re Boyd)*, 2012 WL

5199141 at *4-5 (Bankr. W.D. Tex. Oct. 22, 2012).  Since the Plaintiff does not have

standing to prosecute this particular cause of action on behalf of the bankruptcy estate, the

court has no subject matter jurisdiction over that particular claim.  *See, e.g., U.S. Catholic

Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72 (1988); *Diamond v.

Charles,* 476 U.S. 54 (1986).  Whenever it appears to the court that subject matter

jurisdiction is lacking over a particular count, that portion of the complaint may be

dismissed *sua sponte.  In re Phar-Mor, Inc. Sec. Litig.,* 900 F. Supp. 777, 783 (W.D. Pa.

1994) (citing *Carlsberg Resources Corp. v. Cambria Savings & Loan,* 554 F.2d 1254,

1256–57 (3d Cir. 1977)); *De Leon v. Perry*, 975 F. Supp. 2d 632, 645 (W.D. Tex. 2014)

(citing *Taylor ex rel. Gordon v. Livingston,* 421 Fed. Appx. 473, 474 (5th Cir. 2011))

["Federal courts have no jurisdiction unless a case or controversy is presented by a party

with standing to litigate."].[8]  Therefore, Count V of the Plaintiff's Complaint will be

dismissed by separate order.

---

[8]  In the alternative, the entry of summary judgment in favor of the Defendant on Count V would be appropriate in any event since the Plaintiff  would be incapable of showing "specific facts" that would support its standing to bring the reverse veil-piercing claim, *see generally, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-63 (1992) and, even if it had standing, its efforts to make other non-parties liable for the earlier judgment at this stage would be precluded by Texas law. *In re Smith*, 192 S.W.3d 564, 568-69 (Tex. 2006).

*Summary Judgment Standard*

The Defendant brings his Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[9] "The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses." *Chishty v. Texas Dept. of Aging and Disability Services,* 562 F. Supp. 2d 790, 800 (E.D. Tex. 2006).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c).

---

[9] Pursuant to the scheduling order issued in this adversary proceeding on December 16, 2013, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions are decided under the procedures stated therein.

The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial.  If, as in this instance, the burden of persuasion rests on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways.  First, the moving party may submit affirmative evidence that negates an essential element of the non-moving party's claim.  Secondly, the moving party may demonstrate to the Court that the non-moving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.  *Celotex*, 477 U.S. at 322-323 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (internal citations omitted); *Stults v. Conoco, Inc*., 76 F.3d 651, 655 (5th Cir. 1996).

If the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.  *Anderson,* 477 U.S. at 256-57; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).  "A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).  Accordingly, a genuine issue of material fact is presented and a trial is required only if the non-movant with the ultimate burden of proof is able to produce summary judgment evidence sufficient to sustain a finding in its favor on that issue.

*Anderson,* 477 U.S. at 256-57 [requiring "evidence from which a jury might return a verdict in its favor"]; *see also Apache Corp. v. W & T Offshore, Inc.,* 626 F.3d 789, 793 (5th Cir. 2010); *Terry v. BP Amoco Chem. Co., 2014 WL 2916*414 at *6 (5th Cir. June 27, 2014). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The summary judgment record is viewed in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), "but only where there is an actual controversy, that is, when <u>both</u> parties have submitted evidence of contradictory facts." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (emphasis added). The Court will not weigh the evidence nor evaluate its credibility; however, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. Thus, a non-movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Essentially, if a non-movant fails to present specific facts that present a triable issue, its claims should not survive summary judgment. *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir. 2001). Indeed, "summary judgment

is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *accord*, *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).

Subject to certain evidentiary rulings of the Court regarding the submitted summary judgment evidence issued by separate order, the Defendant has established a *prima facie* case for summary judgment that requires a response by the Plaintiff. Though he has submitted affirmative evidence, through his sworn declaration, certain deposition excerpts, and discovery responses, that negates certain elements of the Plaintiff's claims, the Defendant has successfully utilized his motion and his tendered summary judgment evidence to establish a *prima facie* case that the Plaintiff's evidence on each count under §727(a) is insufficient to establish an essential element of its claims.

*Reverse Veil-Piercing and the §727(a) Claims*

The complaint filed by the Plaintiff seeks the denial of the Defendant-Debtor's discharge under various subsections of §727(a). The Defendant's Motion seeks summary judgment on all of those counts based upon the asserted failure of the Plaintiff, as the party bearing the ultimate burden of proof, to tender probative summary judgment evidence sufficient to sustain a finding in its favor on each essential element under each subsection of §727(a) pled by the Plaintiff. The Court has carefully examined (a) the arguments of the Plaintiff, and (b) the source and nature of the summary judgment

evidence tendered in support thereof, in order to determine whether a genuine issue of material fact exists for which a trial is necessary.  The Court concludes that there is not.

Even the Plaintiff concedes that its contentions under §727(a) are essentially based upon the validity of its alter ego/veil-piercing claims, and particularly upon one uncontested fact:  the Debtor-Defendant's continued use of the bank account of his single-member LLC, P Custom Homes, LLC ("PCH"), from which he has admittedly paid for personal expenses.[10]  As outlined earlier, it is absolutely clear that the Plaintiff has no standing to bring those particular claims for the benefit of the Defendant-Debtor's bankruptcy estate and its creditors.  Yet, notwithstanding the fact that the Plaintiff is precluded under both federal bankruptcy law[11] and Texas law[12] from seeking an actual judicial declaration that the "corporate veil" of PCH or any of the other of the Defendant's companies should be pierced, the Plaintiff still relies upon the application of the reverse veil-piercing principles to prove its various §727(a) claims.  The Plaintiff essentially contends that the Defendant must be denied a Chapter 7 discharge for his failure to list the assets of PCH and the other corporate assets as his own personal assets in his Chapter 7 bankruptcy schedules.  Despite the existence of those absolute legal

---

[10]  See Plaintiff's Response at ¶5.

[11]  *See supra* pp. 3-6 regarding dismissal of Count V of the Plaintiff's complaint.

[12]  *See supra* note 4.  Further, the Plaintiff is precluded from enforcing its acquired judgment against any unnamed party, including any purported alter ego of the judgment debtor, because its predecessor-in-interest failed to name the Debtor's LLC as a party to the original lawsuit.  *In re Smith*, 192 S.W.3d 564, 568-69 (Tex. 2006).

barriers, the Plaintiff insists that an unassailable legal conclusion — that the referenced assets of those particular organizations do not constitute property of the Defendant's bankruptcy estate — should be blithely ignored by this Court. Even though the Plaintiff is barred from obtaining that legal declaration through any proper legal proceeding, the Plaintiff argues that the Defendant should be punished through denial of his discharge for his failure to admit and acknowledge personal ownership of those corporate and LLC assets. Although these legal impediments bar the Plaintiff from pleading and proving any type of alter ego claim, the Plaintiff urges the Court to follow the reasoning of certain non-precedential decisions[13] and use its equitable powers to apply the referenced reverse veil-piercing principles to reach a just result, even though those principles could not actually be used to breach the legal protections that PCH and the other corporate organizations have under applicable Texas law.

However just the Plaintiff's ultimate goal might seem, equitable principles cannot be legitimately used to sidestep the clear requirements of the Bankruptcy Code and to ignore the protections of state law in order to establish an artificial evidentiary foundation upon which to deny the Defendant's discharge. It must first be acknowledged that, in light of the Plaintiff's lack of standing to bring its reverse veil-piercing claims under

---

[13] *See, e.g., U.S. Trustee v. Zhang (In re Zhang)*, 463 B.R. 66, 79 (Bankr. S.D. Ohio 2012) and cases cited therein, applying, in its own words, "these same [alter ego, veil-piercing] concepts outside the corporate fiction scenario when debtors have placed assets under the name or custody of other people."]. Of course, the summary judgment evidence in this case establishes that the cash that comes into the PCH account is a result of actual PCH contracts, not cash owned by the Defendant which is then placed into the PCH account.

Count V, and the fact that the organizational integrity of those various entities, including PCH, will not be compromised as a result of this adversary proceeding, any summary judgment evidence submitted by the Plaintiff to establish that the assets of any independent company should be treated as the assets of this bankruptcy estate, or in support of the proposition that the Defendant can somehow be sanctioned for his failure to schedule those corporate assets as his own, must be disregarded.  There was simply no legal basis upon which the Defendant was required to list the bank accounts, existing contracts, or to account for other assets of those corporate organizational entities in his personal bankruptcy schedules.[14]

In regard to the Defendant's involvement with those entities, there is equally no issue for trial. The summary judgment record indisputably establishes that the Defendant has not concealed material information regarding the means by which he has been conducting his financial affairs within the requisite time period.  He disclosed the existence of his various companies and his use of PCH assets to pay personal expenses. Recognizing that single-member LLCs and closely-held corporations can only engage in business activity through the actions of involved individuals, the Defendant described his interactions with those entities, particularly with PCH, to the Trustee at the §341 meeting and answered all questions tendered to him regarding the activities of PCH as a builder of custom homes, its contracts, its financial struggles, and the methodologies by which the

---

[14]  This would include any listing of inter-company transfers between those entities.

Defendant has realized income through that company.  There is nothing in the record that indicates that the Trustee was dissatisfied with the responses to those inquiries.

As for the propriety of the Defendant's net valuation of those membership interests in his schedules, his claim that the membership interests actually have no value to the estate cannot be legitimately described as meritless.  It may not even be debatable.  It certainly is not fraudulent, notwithstanding any ongoing business operations of PCH that involves the receipt of construction funds with the corresponding obligation to disseminate the vast majority of those funds to expectant subcontractors.  The Court must further note that there is no competent summary judgment evidence presented that indicates the Defendant was anything less than cooperative with the Trustee or the bankruptcy process in general.  Further, there is no competent summary judgment evidence that contradicts the entity valuations proffered by the Defendant. There is certainly no summary judgment evidence that the Trustee thought those values were erroneous, much less fraudulent.  Indeed, in approving a sale of one of the related entities back to the Defendant for $17,000, Judge Rhoades made an express finding that such entity had "negative equity" and "negligible, if any, value."[15]

The summary judgment record establishes that the Trustee had ample opportunity to examine the Defendant regarding those entities and to take appropriate action against

---

[15]  See *Order Approving Sale and Findings of Fact and Conclusions of Law Regarding the Trustee's Application to Sell Property of the Estate Free and Clear of All Liens, Claims and Encumbrances with Liens to Follow Proceeds and Notice to Creditors* [dkt #103] entered in the main bankruptcy case [13-41304] on March 24, 2014.

those entities for the benefit of the bankruptcy estate if the Trustee thought that the

Defendant was improperly utilizing the related organizations for fraudulent or dishonest

purposes.  No such action was taken and, again, no summary judgment evidence has been

presented which indicates that the Trustee was dissatisfied with the level of disclosure

and cooperation from the Defendant in this case.  That is the key to this summary

judgment motion.  There was disclosure by the Defendant in this case — providing the

bankruptcy estate with an opportunity to take informed actions.  The schedules contained

proper disclosures of the Defendant's personal assets and he provided additional

information as requested.  While a discharge may be properly denied for concealment

when a debtor places assets beyond the legitimate reach of creditors or withholds vital

information to which creditors are entitled, that did not occur in this case.  Instead there

was disclosure and the opportunity for the bankruptcy estate to take appropriate action as

advisable.  That is the *quid pro quo* for a bankruptcy discharge.  The fact that the Trustee

evaluated the information and elected to forego any action to bring the assets of any of the

affiliated entities into the bankruptcy estate does not change that evaluation.

That said, there are admittedly some aspects of this dispute that are troublesome to

the Court.  No matter what rights the Defendant may have to disregard PCH as a separate

taxable entity for the purposes of federal income taxation, he has no right to disregard its

organizational integrity any more than the Plaintiff can.  Once the Defendant is owed

money by PCH for personal services, such funds may not unilaterally be retained in the

PCH account by the Defendant in order to frustrate the collection rights of a creditor, no

matter what tax treatment is ascribed to PCH.  However, because the structural integrity

of PCH has not been legally compromised and in light of the summary judgment evidence

that PCH contracts produce PCH assets in its account, the Plaintiff was required to

produce specific evidence that the Defendant had improperly retained *his* funds in the

PCH account during the requisite time period.  By failing to present such summary

judgment evidence, there is nothing in the record that contradicts the legal conclusion that

the funds in the PCH account constitute PCH assets.  If the appropriation of PCH assets

by the Defendant is improper, as the Plaintiff alleges, it is improper as to (and perhaps

avoidable by) PCH creditors, but not to creditors of the individual Defendant.  With the

"corporate veil" of PCH intact, the Plaintiff's unsubstantiated assertions and speculation

regarding the impropriety of the Defendant's use of the PCH funds are not sufficient to

defeat the Defendant's motion for summary judgment.

Thus, for the purposes of §727(a), the legal integrity of each affiliated entity

remains intact, the Plaintiff's contention that all assets owned by these companies

constitute assets of this bankruptcy estate must be legally rejected, and the Defendant

cannot be properly subjected to the denial of his discharge for any failure to schedule all

of those assets as his personal assets.  The Court therefore concludes that the Plaintiff has

failed, with regard to three of the §727(a) subsections upon which its claims rest solely

upon its veil-piercing allegations, to present summary judgment evidence necessary to

sustain a finding in its favor as to each of the following elements:

§727(a)(2)(A):[16]  that –      (1) any transfer or concealment of property;
                                (2) belonging to the debtor;
                                (3) occurred within one year of the filing of the petition.


§727(a)(3):[17]  that – (1) the Defendant failed to keep and preserve financial records; and
                        (2) such failure precluded creditors from ascertaining the
                             Defendant's financial condition.


§727(a)(5):[18]        that there has been a loss of substantial assets *belonging to the*

---

[16]  (a)  The court shall grant the debtor a discharge, unless —

    (2)  the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate
    ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted
    to be transferred, removed, destroyed, mutilated, or concealed —

        (A)  property of the debtor, within one year before the date of the
        filing of the petition . . . .

*See Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989).

[17]  (a)  The court shall grant the debtor a discharge, unless  —

    the debtor has concealed, destroyed, mutilated, falsified, or failed to keep
    or preserve any recorded information, including books, documents,
    records, and papers, from which the debtor's financial condition or
    business transactions might be ascertained, unless such act or failure to
    act was justified under all of the circumstances of the case.

"Individuals who desire the privilege of a discharge are required to provide their creditors with enough
information to ascertain the debtor's financial condition and track his financial dealings with substantial
accuracy for a reasonable period past to present.  Section 727(a)(3) is intended to allow creditors and/or
the trustee to examine the debtor's financial condition and determine what has passed through a debtor's
hands."  *Neary v. Guillet (In re Guillet)*, 398 B.R. 869, 888 (Bankr. E.D. Tex. 2008) (citations and
internal quotations omitted).  However, the Plaintiff has an initial burden to demonstrate that financial
records were not preserved.  *Martin Marietta Matl's Southwest, Inc. v. Lee (In re Lee)*, 309 B.R. 468, 477
(Bankr. W.D. Tex. 2004) (citing *Robertson v. Dennis (In re Dennis),* 330 F.3d 696, 703 (5th Cir.2003)).

[18]  (a)  The court shall grant the debtor a discharge unless —

    the debtor has failed to explain satisfactorily, before determination of denial
    of discharge under this paragraph, any loss of assets or deficiency of assets to
    meet the debtor's liabilities.

Section 727(a)(5) mandates that the plaintiff identify which assets have been lost.  *Lowry v. Croft (In re*

*Debtor-Defendant* in the case.

Accordingly, summary judgment must be rendered for the Defendant on the Plaintiff's

claims under those three subsections.

*§727(a)(4)(A): False Oaths.*

With regard to the Plaintiff's failure to present summary judgment evidence

necessary to sustain a finding in its favor regarding the existence of a false oath under

§727(a)(4)(A), more explanation is necessary since the Plaintiff offers summary judgment

evidence regarding scheduling errors that are unrelated to its unauthorized veil-piercing

allegations.  As this Court has recently observed:

> "False oaths sufficient to justify denial of discharge include (1) a false
> statement or omission in the debtor's schedules or statement of financial
> affairs, or (2) a false statement by the debtor at an examination during the
> course of the bankruptcy proceedings."  *Buckeye Retirement Co., LLC v.
> Bullough (In re Bullough)*, 358 B.R. 261, 280 (Bankr. N.D. Tex. 2007).
> However, not every misstatement or omission in the schedules constitutes a
> false oath.  Indeed, even multiple errors do not mandate the finding of a
> false oath without sufficient evidence of a fraudulent intent.  *See, e.g.,
> Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561 (5th Cir. 2005).

*First United Bank & Trust Co. v. Buescher (In re Buescher)*, 491 B.R. 419, 432 (Bankr.

E.D. Tex. 2013).  In the present context, the Plaintiff must present sufficient summary

judgment evidence to create a fact issue with regard to the following elements:  (1) the

---

*Croft)*, 500 B.R. 823, 859-60 (Bankr. W.D. Tex. 2013).

debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent[19]; and (5) the statement materially related to the bankruptcy case. *Cadle Co. v. Duncan (In re Duncan),* 541 F.3d 688, 695 (5th Cir. 2009); *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992).   Obviously, the Defendant's failure in this instance to list corporate assets in his schedules cannot constitute a false oath.

However, the Plaintiff offers the existence of two errors contained in the Defendant's schedules and statements which it contends should result in the denial of the Defendant's discharge under §727(a)(4)(A).  The first error arises from Item19 on Defendant's Statement of Financial Affairs wherein the Defendant answered that he had no bookkeeper or accountant within two years.  This was obviously erroneous.  The Defendant had utilized the same accountant for a number of years.  The Plaintiff, in fact, tendered a 2010 deposition of that accountant in support of its response to the motion for summary judgment and the Plaintiff's representative affirmed her awareness of the Defendant's accountant during her July 14, 2014 deposition.  So the existence of the accountant was not hidden, but was, in fact, clearly known to the Defendant's most active creditor. As for the Trustee, the Defendant corrected that his omission of the accountant information during his testimony at the §341 Meeting and answered all questions

---

[19]  Constructive fraud– circumstances indicating that the debtor *could* or *should* have known of fraud– is insufficient in this instance; only actual fraudulent intent warrants the denial of the debtor's discharge.  *Chastant*, 873 F.2d at 90-91.

regarding the accountant's role.[20]

Secondly, the Plaintiff notes that the omission of any insurance policy.  Though the Plaintiff did not provide any proof that any such insurance policy exists, it did note that the Defendant listed a monthly expenditure for life insurance in his Schedule J.  Even if one presumes the existence of any such policy, nothing is known about its type or value, or whether the policy is actually owned by the Defendant or one of the affiliated entities.

With regard to each omission, there is arguably summary judgment evidence supporting the Plaintiff's case regarding three of the five elements required by §727(a)(4)(A).[21]  However, in each instance, the Plaintiff has failed to satisfy the remaining elements.  The Plaintiff provided no summary judgment evidence that the Defendant's failure to disclose the bookkeeper or to list his life insurance policy was done "with fraudulent intent" or that the respective statements were "materially related to the bankruptcy case."

Whether a false statement was made with a fraudulent intent requires the demonstration of an actual intent to hinder, delay, or defraud creditors — a constructive intent is insufficient.  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 384 (Bankr. E.D. Tex. 2009).  However, in most circumstances only the debtor can testify

---

[20] Plaintiff's Ex. 3 at 5:2-6; 35:19 - 36:9; 38:8 - 39:3.

[21] Those three factors are:  (1) the debtor made a statement under oath; (2) the statement was false; and (3) the debtor knew the statement was false.

directly concerning his or her intent and "rare will be the debtor who willingly provides direct evidence of a fraudulent intent." *Neary v. Darby (In re Darby)*, 376 B.R. 534, 541 (Bankr. E.D. Tex. 2007). Instead, the existence of a fraudulent intent is most often betrayed by an examination of a course of conduct. *First Tex. Savings Assoc. v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir. 1989). Thus, "[f]raudulent intent may be proved by showing either actual intent to deceive or a reckless indifference for the truth." *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 504 (Bankr. N.D. Tex. 2006); *see also*, *Sholdra v. Chilmark Fin., LLP (In re Sholdra)*, 249 F.3d 380, 382-83 (5th Cir. 2001). There is no summary judgment evidence to support a contention that either of these omissions occurred with an actual intent to deceive by the Defendant or that they reveal a degree of carelessness that constitutes a reckless indifference to the truth.

A false statement or omission is material "if it bears a relationship to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 692 (Bankr. E.D. Tex. 2009) (*citing Cadle Co. v. Duncan,* 541 F.3d at 695*)*. In this context, one must be reminded that the whole purpose of this subsection is to ensure "that adequate information is available for the trustee and creditors without need for investigation to determine whether the information provided is true." *Beauboeuf*, 966 F.2d at 179. There is no summary judgment evidence that such a function was jeopardized in this case as a result of these problems with the Defendant's schedules. There is no summary judgment evidence that

these omissions detrimentally delayed anyone from gathering information.  Thus, the Plaintiff has failed to present the summary judgment evidence necessary to sustain a finding in its favor that the referenced false statements materially related to the bankruptcy case or were presented by the Defendant with a fraudulent intent. Accordingly, summary judgment must be rendered for the Defendant on the Plaintiff's claim under §727(a)(4)(A).

## Conclusion

The Bankruptcy Code requires that a debtor be granted a discharge unless one of the statutory grounds for denial of that discharge is proven.  11 U.S.C. §727(a).  The denial of a debtor's discharge is considered an extreme remedy.  *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 845 (Bankr. N.D. Tex. 2003)(citing *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)).  "Courts should deny discharge only for very specific and serious infractions."  *Martin Marietta Matl's Southwest, Inc. v. Lee (In re Lee)*, 309 B.R. 468, 476 (Bankr. W.D. Tex. 2004) (citing *Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.2d 1169, 1172 (5th Cir. 1991)).  It is to be imposed only upon those debtors who have not been honest and forthcoming about their affairs and therefore have not fulfilled the duties of full disclosure required of a bankruptcy debtor.  *Buckeye Retirement Properties v. Tauber (In re Tauber)*, 349 B.R. 540, 545 (Bankr. N.D. Ind. 2006) ["The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor."].  Speculation and surmise

about such activities are insufficient. Probative evidence must be presented. In accordance with the statutory policy, the provisions of §727(a) are construed strictly against parties seeking to deny the granting of a debtor's discharge. *Laughlin v. Nouveau Body & Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010); *Melancon v. Jones (In re Jones)*, 292 B.R. 555, 559 (Bankr. E.D. Tex. 2003). In the face of a debtor's summary judgment challenge to a §727(a) complaint, a plaintiff is thus compelled to demonstrate the existence of admissible evidence upon which a factfinder could base an affirmative finding for that plaintiff regarding each and every element required under any §727(a) subsection. In this instance, the Plaintiff has failed to fulfill that responsibility. In the absence of such evidence, summary judgment for the debtor is mandated.

For the reasons set forth in this memorandum, the Court concludes that the motion for summary judgment filed by the Defendant, Athol W. Packer, in the above-referenced adversary proceeding should be granted and that such Defendant is entitled to a summary judgment that all relief sought by the complaint filed by the Plaintiff, Judgment Factors, L.L.C., pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(3), (a)(4)(A), and (a)(5), respectively, must be denied. An appropriate order and judgment will be entered which is consistent with this opinion.

Signed on 10/10/2014

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

-23-